```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


VEDROS                                         CIVIL ACTION

VERSUS                                         NO: 11-1198

NORTHROP GRUMMAN ET AL.                        SECTION: "J" (4)
```

**ORDER & REASONS**

Before the Court is Plaintiffs Gerald Vedros, Lori Vedros Kravet, and Valerie Vedros White's *Motion to Exclude Certain Testimony of Danny Joyce* **(Rec. Doc. 450)** and Defendant Northrop Grumman Shipbuilding, Inc. (n/k/a Huntington Ingalls Incorporated, f/k/a Northrop Grumman Ship Systems, Inc., f/k/a Avondale Industries, Inc., f/k/a Avondale Shipyards, Inc., f/k/a Avondale Marine Ways, Inc.)("Avondale")' and Albert L. Bossier, Jr., and J. Melton Garrett, and OneBeacon America Insurance Company, and American Employers Insurance Company in their capacities as alleged insurers of Avondale's alleged executive officers (collectively, "Avondale Interests")'s opposition thereto (Rec. Doc. 465), as well as Plaintiffs' *Motion to Exclude Certain Testimony of Dennis J. Paustenbach* **(Rec. Doc. 451)** and Defendant Bayer CropScience, Inc., as Successor to Rhone-Poulenc AG Company, f/k/a Amchem Products, Inc., f/k/a Benjamin Foster Company ("Amchem")'s opposition thereto. (Rec. Doc. 466) Having considered the parties' submissions, the

record, and the applicable law, the Court finds, for the reasons expressed below, that the motions should be **DENIED**.

## FACTS AND PROCEDURAL BACKGROUND

The Court is familiar with the facts of the case and so will provide only a brief recitation here. This action arises from the death of Sally Gros Vedros ("Vedros") due to mesothelioma. Alton Gros, Vedros's father, worked at Avondale as a welder from 1943 to 1976, and Vedros claims to have spent many years washing her father's work clothes, which allegedly resulted in Vedros's secondary exposure to insulation dust containing asbestos. Vedros also worked at Avondale from 1960 to 1963 in the purchasing department, and she claims that she was directly exposed to asbestos while she worked at Avondale. Before her death, Vedros filed suit against many defendants, and after her death, her children joined the suit as Plaintiffs. Although Plaintiffs filed suit in state court, Defendants removed the matter to this Court on May 20, 2011.

Defendant Avondale and Avondale Interests procured an expert report from Danny Joyce regarding Vedros's alleged exposure to asbestos manufactured by R.J. Dorn Company ("R.J. Dorn") and Johns-Manville. In his report, Joyce opines on the exposure that Vedros could have suffered from her father's clothing while he worked at R.J. Dorn. He further addresses Vedros's exposure to Johns-Manville asbestos-containing scrap

2

material as a result of its use in driveways, walkways, and fill material on the Westbank of Jefferson Parish.

Defendant Amchem obtained expert testimony from Dennis J. Paustenbach to show that the asbestos-containing Benjamin Foster 81-27 product would not have contributed to Vedros's injury. Paustenbach conducted a number of tests relating to Benjamin Foster 81-27 and concluded that its asbestos fibers would not be substantially released during certain activities, including when removed or cleaned from clothing. Additionally, as did Joyce, Paustenbach opined that the use of Johns-Manville's asbestos-containing scrap material on the Westbank of Jefferson Parish contributed to Vedros's injury.

Plaintiffs filed their *Motion to Exclude Certain Testimony of Danny Joyce* **(Rec. Doc. 450)** and *Motion to Exclude Certain Testimony of Dennis J. Paustenbach* **(Rec. Doc. 451)** on June 2, 2015. On June 9, 2015, Avondale (Rec. Doc. 465) and Amchem (Rec. Doc. 466) filed oppositions.

## PARTIES' ARGUMENTS

**A. Motion to Exclude Certain Testimony of Danny Joyce**

Plaintiffs seek to exclude certain testimony of Danny Joyce, arguing that it is unreliable. (Rec. Doc. 450) Plaintiffs first argue that Joyce lacks any evidence that Vedros's father ever worked at R.J. Dorn. Plaintiffs assert that Joyce has no evidence showing that Vedros's father worked as a laborer at

3

R.J. Dorn or the tasks that such laborers performed. Even if there were such evidence, Plaintiffs contend that Joyce has no evidence from which to conclude that Vedros's father wore his R.J. Dorn work clothes home. Next, Plaintiffs argue that Joyce should be precluded from presenting evidence that Vedros was exposed to asbestos while living on the Westbank of Jefferson Parish. They argue that there is no evidence to show that she was exposed to any asbestos as a result of residing in the area.

Avondale counter argues that Joyce's testimony is both relevant and reliable and, therefore, should be admitted. (Rec. Doc. 465) Avondale argues that a factual basis exists for Joyce's testimony regarding Vedros's exposure to asbestos as a result of her father working for R.J. Dorn. Avondale states that both Vedros's father's Social Security records and the application he submitted to Avondale while seeking to work there reveal that he worked at R.J. Dorn. Avondale further argues that Joyce concluded that Vedros's father worked there as a laborer, because he lacked the qualifications to do any other kind of work for the company. Additionally, Avondale states that Joyce reviewed documentation regarding the asbestos products that R.J. Dorn manufactured at its Tchoupitoulas Street facility during the time that Vedros's father worked there. Avondale argues that the manufacturing facilities for the kinds of asbestos-containing products that R.J. Dorn manufactured are "notorious"

4

for asbestos exposure. Next, Avondale argues that Joyce's testimony regarding Vedros's exposure to Johns-Manville asbestos-containing scrap material while living on the Westbank of Jefferson Parish is well founded. This scrap material contained crocidolite asbestos, the most toxic form of asbestos for causing mesothelioma, and was used to make "driveways, parking lots, playgrounds, school yards, golf courses, drive-ins, and was disposed of in dump sites, on the Westbank." (Rec. Doc. 465, p. 4) In fact, Avondale stresses that, in the 1990s, the Environmental Protection Agency became alarmed at the toxicity of many such sites and abated many of them, including a site near Vedros's home at 2101 ½ Lafayette Street.[1] Avondale therefore argues that Joyce's testimony has a sufficient factual basis to satisfy the requirements of Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).

**B. Motion to Exclude Dennis J. Paustenbach**

Plaintiffs argue that Paustenbach's testimony that Benjamin Foster 81-27 does not substantially release asbestos and that Vedros was exposed to asbestos from living on the Westbank of Jefferson Parish should be excluded. (Rec. Doc. 451) Plaintiffs assert that Paustenbach did not conduct any fiber release testing with regard to the product at issue here,

---

[1] Avondale bases this argument on Asbestos Disposal Verification Forms for 2101 Lafayette Street. As mentioned above, Vedros lived at 2101 ½ Lafayette Street.

5

Benjamin Foster 81-27. Thus, because Vedros allegedly was exposed to this product as a result of removing it from her father's clothing, Plaintiffs argue that Paustenbach's testimony has no bearing on the instant controversy. Plaintiffs contend that any tests of other Benjamin Foster products are irrelevant and should be excluded. Further, Plaintiffs assert that Paustenbach failed to monitor the air for fiber release when he conducted clothing stain tests with the alternative Benjamin Foster products. These tests therefore are not helpful for determining whether Vedros was exposed to asbestos fiber release from Benjamin Foster 81-27 when she washed her father's clothing. Next, Plaintiffs again argue that testimony regarding Vedros's alleged exposure to asbestos from living on the Westbank is not well founded, for the same reasons as above.

Defendant Amchem argues that Plaintiffs' motion is essentially a presentation of their substantive arguments challenging the Paustenbach's conclusions, which arguments go only to the *weight* and not the *admissibility* of his expert testimony. (Rec. Doc. 466) Amchem asserts that Paustenbach performed a number of studies using Benjamin Foster 81-27, the results of which have been published in peer-reviewed scientific literature. Amchem argues that the conditions of Paustenbach's tests mirror the alleged exposure scenario at issue in this case, and therefore, the tests are "helpful to the jury in

6

understanding the possible exposures from cleaning 81-27." (Rec. Doc. 466, p. 7) Lastly, Amchem disputes Plaintiffs' arguments regarding the Westbank exposure testimony, presenting similar arguments to Avondale.

**LEGAL STANDARD**

Federal Rule of Evidence 702 provides that a witness who is qualified as an expert may testify if: (1) the expert's "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (2) the expert's testimony "is based on sufficient facts or data"; (3) the expert's testimony "is the product of reliable principles and methods"; and (4) the principles and methods employed by the expert have been reliably applied to the facts of the case. FED. R. EVID. 702. The United States Supreme Court's decision in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), provides the analytical framework for determining whether expert testimony is admissible under Rule 702. Both scientific and nonscientific expert testimony are subject to the Daubert framework, which requires trial courts to make a preliminary assessment of "whether the expert testimony is both reliable and relevant." Burleson v. Tex. Dep't of Criminal Justice, 393 F.3d 577, 584 (5th Cir. 2004); see also Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 147 (1999). When expert testimony is challenged under Daubert, the party offering the

7

expert's testimony bears the burden of proving its reliability and relevance by a preponderance of the evidence. Moore v. Ashland Chem. Co., Inc., 151 F.3d 269, 276 (5th Cir. 1998).

The reliability of expert testimony "is determined by assessing whether the reasoning or methodology underlying the testimony is scientifically valid." Knight v. Kirby Inland Marine Inc., 482 F.3d 347, 352 (5th Cir. 2007). A number of nonexclusive factors may be relevant to the reliability analysis, including: (1) whether the technique at issue has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. Burleson, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every Daubert factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." Guy v. Crown Equip. Corp., 394 F.3d 320, 325 (5th Cir. 2004); see also Runnels v. Tex. Children's Hosp. Select Plan, 167 F. App'x. 377, 381 (5th Cir. 2006) ("A trial judge has considerable leeway in determining how to test an expert's reliability.") (internal citations and quotations omitted).

With respect to the relevancy prong, the proposed expert testimony must be relevant "not simply in the way all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." Bocanegra v. Vicmar Servs., Inc., 320 F.3d 581, 584 (5th Cir. 2003). Ultimately, the Court should not allow its "gatekeeper" role to supersede the traditional adversary system, or the jury's place within that system. Scordill v. Louisville Ladder Group, L.L.C., No. 02-2565, 2003 WL 22427981, at *3 (E.D. La. Oct. 24, 2003). As the court in Daubert noted, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596. As a general rule, questions relating to the basis and sources of an expert's opinion rather than its admissibility should be left for the jury's consideration. United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty., Miss., 80 F.3d 1074, 1077 (5th Cir. 1996) (citing Viterbo v. Dow Chem. Co., 826 F.2d 420, 422 (5th Cir. 1987)).

## DISCUSSION

The crux of Plaintiffs' arguments with regard to both experts seems to be that they lack a factual basis for their opinions. Further, Plaintiffs seem to be arguing the merits of

their case rather than the admissibility of the evidence. The Court finds that the issues that Plaintiffs raise relating to the basis and sources of Joyce and Paustenbach's opinions should be left to the jury. See 14.38 Acres of Land, 80 F.3d at 1077. Plaintiffs may expose the alleged weaknesses in the opinions of Joyce and Paustenbach through cross examination and our adversarial system. See Daubert, 509 U.S. at 596. The Court will not preclude testimony of Joyce and Paustenbach. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' motions **(Rec. Docs. 450, 451)** are **DENIED**.

New Orleans, Louisiana this 18th day of June, 2015.

*[Signature]*
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE