UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SALLY GROS VEDROS                          CIVIL ACTION


VERSUS                                     NO: 11-1198


NORTHROP GRUMMAN SHIPBUILDING,             SECTION: "J" (4)
INC., ET AL.


<u>**ORDER AND REASONS**</u>

Before the Court is a Motion to Exclude (Rec. Doc. 448) filed by Defendant, Bayer CropScience, Inc., successor to Rhone-Poulenc AG Company, formerly known as Benjamin Foster Products, Inc., formerly known as Amchem Company ("Amchem"), and an opposition thereto (Rec. Doc. 459) by Plaintiffs, Sally Gros Vedros, et al ("Plaintiffs"). Having considered the motion, the parties' submissions, the record, and the applicable law, the Court finds, for the reasons expressed below, that the motion should be DENIED.

**PROCEDURAL AND FACTUAL BACKGROUND**

At this point in the litigation, both the Court and the parties are extremely familiar with the facts of this case. The Court has previously set out the detailed facts of this matter in its Order and Reasons dated April 24, 2014. (Rec. Doc. 341). For purposes of the instant motion, only the following facts are pertinent.

1

This action arises from the death of Sally Gros Vedros ("Vedros") due to mesothelioma. Alton Gros, Vedros's father, worked at Avondale as a welder from 1943 to 1976, and Vedros claims to have spent many years washing her father's work clothes, which allegedly resulted in Vedros's secondary exposure to insulation dust containing asbestos. Vedros also worked at Avondale from 1960 to 1963 in the purchasing department, and she claims that she was directly exposed to asbestos while she worked at Avondale Shipyards.

In 2010, Vedros filed the present lawsuit in the Civil District Court for the Parish of Orleans, naming a number of parties as defendants, including Amchem. Amchem was the manufacturer of a numerous products containing asbestos, including coatings, sealants, and mastics. Plaintiffs allege that Vedros was exposed to these products, specifically an adhesive called "81-27," during either her or her father's employment at Avondale Shipyards. Defendants removed the matter to this Court on May 20, 2011, pursuant to the Federal Officer Removal Statute, U.S.C. § 1442(a)(1). Shortly thereafter, on June 3, 2011, Vedros died from her struggle with mesothelioma.

On December 23, 2013, Amchem filed a Motion for Summary Judgment (Rec. Doc. 214), requesting that the Court dismiss Plaintiffs' claims against it, arguing that Plaintiffs had failed

to show that Vedros was ever exposed to asbestos from Amchem products. After conducting oral argument, the Court denied the motion, finding that sufficient evidence existed in the record to support Plaintiffs' claims against Amchem. (Rec. Doc. 318). On December 24, 2013, Amchem then filed a Motion to Exclude Certain Tests Conducted by Dr. James Millette (Rec. Doc. 224), which was opposed by Plaintiffs (Rec. Doc. 241), and to which Amchem filed a reply (Rec. Doc. 279). The Court subsequently continued the trial date of this matter, and in doing so ordered that all pending motions, including Amchem's Motion to Exclude Tests were denied without prejudice to be refiled closer to the trial date. (Rec. Doc. 381). Amchem recently re-filed this motion. (Rec. Doc. 447).

Plaintiffs have retained Frank Parker, III ("Parker"), an industrial hygienist, to testify as an expert witness at trial. Parker's expert report details his opinions regarding Vedros and her father's exposure to asbestos from products including those manufactured by Amchem, as well as the increased risk caused by this exposure. (Rec. Doc. 459-9). Amchem has now filed the instant motion requesting that the Court exclude at trial the expert testimony of Plaintiffs' industrial hygienist expert, Parker, on the bases that he is unqualified as an expert and that his testimony is both unreliable and unduly speculative.

**PARTIES' ARGUMENTS**

3

Amchem presents several arguments in support of its motion to exclude Parker's expert testimony. First, Amchem contends that Parker is not qualified to testify as an expert in this matter, because he lacks "any experience with mastics or adhesives" that would allow him to testify that exposure to asbestos in Amchem's mastics caused or contributed to Vedros's mesothelioma. Second, Amchem argues that Parker's testimony is inadmissible due its unreliability. Amchem contends that Parker's testimony is purely speculative, because he has failed to rely on any facts or data to support his opinion that Vedros was exposed to asbestos through Amchem's products. Amchem also notes that Parker has failed to conduct any analysis of Vedros's exposure to Amchem 81-27 and has not even attempted to quantify the "concentration or duration" of Parker's exposure to asbestos in Amchem's products or calculate the risk involved in such exposure. Amchem further notes that Parker has not conducted any testing on mastics, and instead relies on a series of unpublished experiments conducted by Dr. James Millette regarding fiber release, which form the basis of Amchem's pending *Motion to Exclude* (Rec. Doc. 447). Amchem references this motion, and again asserts that the underlying studies conducted by Dr. Millette are unreliable and therefore inadmissible for, amongst other reasons, failing to include quality control checks. Considering the numerous alleged flaws in Parker's testimony, Amchem argues that the Court should find that Parker is not

qualified to testify as an expert in this matter and exclude his testimony.

In response, Plaintiffs maintain that Parker is qualified to testify as an expert in this matter, and that his testimony is both reliable and not unnecessarily speculative. First, Plaintiffs present the Court with a number of cases within Louisiana in which the courts denied similar Daubert motions seeking to exclude Parker's testimony. Plaintiffs then assert that as a certified industrial hygienist, Parker is adequately qualified to testify in this matter. Specifically, Plaintiffs note that Parker has reviewed published and unpublished literature regarding fiber release from mastics and adhesives, giving him sufficient background to testify to this issue. Further, Plaintiffs dispute Amchem's allegations that Parker was required to perform tests to calculate the exact dosages of asbestos contained in the Amchem products. Moreover, Plaintiffs contest Amchem's assertions that the Millette studies are unreliable, and incorporate the arguments previously provided to the Court in their Opposition to Amchem's motion to exclude the Millette studies (Rec. Doc. 458). Plaintiffs also note that Parker has not only relied on the Millette studies, but has also relied on the deposition of Vedros and other Avondale employees, his own expertise and knowledge, and a second published study regarding fiber release from mastics and adhesives.

**LEGAL STANDARD**

Federal Rule of Evidence 702 provides that a witness who is qualified as an expert may testify if: (1) the expert's "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (2) the expert's testimony "is based on sufficient facts or data"; (3) the expert's testimony "is the product of reliable principles and methods"; and (4) the principles and methods employed by the expert have been reliably applied to the facts of the case. FED. R. EVID. 702. The United States Supreme Court's decision in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), provides the analytical framework for determining whether expert testimony is admissible under Rule 702. Both scientific and nonscientific expert testimony are subject to the Daubert framework, which requires trial courts to make a preliminary assessment of "whether the expert testimony is both reliable and relevant." Burleson v. Tex. Dep't of Criminal Justice, 393 F.3d 577, 584 (5th Cir. 2004); see also Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 147 (1999). When expert testimony is challenged under *Daubert*, the party offering the expert's testimony bears the burden of proving its reliability and relevance by a preponderance of the evidence. Moore v. Ashland Chem. Co., Inc., 151 F.3d 269, 276 (5th Cir. 1998).

The reliability of expert testimony "is determined by assessing whether the reasoning or methodology underlying the testimony is scientifically valid." Knight v. Kirby Inland Marine Inc., 482 F.3d 347, 352 (5th Cir. 2007). A number of nonexclusive factors may be relevant to the reliability analysis, including: (1) whether the technique at issue has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. Burleson, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every Daubert factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." Guy v. Crown Equip. Corp., 394 F.3d 320, 325 (5th Cir. 2004); see also Runnels v. Tex. Children's Hosp. Select Plan, 167 F. App'x. 377, 381 (5th Cir. 2006) ("A trial judge has considerable leeway in determining how to test an expert's reliability.") (internal citations and quotations omitted).

### DISCUSSION

### A.   Frank Parker's Qualifications as Expert

The initial issue disputed by the parties is whether Parker is qualified to testify as an expert in this matter. The parties do

not dispute that Parker is a certified industrial hygienist. However, despite this title, Amchem argues that Parker does not have the educational background or experience to qualify as an expert with regards to Vedros's alleged exposure to asbestos from Amchem's mastics and adhesives or the causation of Plaintiffs' mesothelioma. Specifically, Amchem argues that Parker lacks any experience "with mastics or adhesives" and has never performed any tests of mastics and adhesives to support his opinions regarding fiber release.

The Court does not agree with Amchem that Parker lacks qualifications to testify as to Vedros's alleged exposure to asbestos. Parker has testified that he has performed "tens of thousands" of samples on asbestos products throughout his career, and is thus extremely familiar with the effect of asbestos exposure and fiber release from a variety of types of products. (Rec. Doc. 459-28). Amchem provides no support for its argument that Parker should be excluded from testifying merely because he does not have an extensive background in the area of mastics or adhesives. Instead, considering that Parker has reviewed literature regarding mastics and adhesives, and because he has previously testified in numerous asbestos cases within Louisiana as a qualified expert in the field of asbestos exposure, the Court finds no reason to conclude that Parker lacks qualifications as an expert in this matter. See Zimko v. Am.

Cyanamid, 03-0658, p. 16 (La. App. 4 Cir. 6/8/05); 905 So.2d 465,
478-89 (relying on Parker's testimony that the defendant's
refinery constituted "an unsafe environment with respect to
asbestos"); Chaisson v. Avondale Ind., Inc., 05-1511, p. 17 (La.
App. 4 Cir. 12/20/06); 947 So.2d 171, 184)(relying on Parker's
testimony "about asbestos characteristics and the information
available to the industry regarding the hazards of household
asbestos exposure"); Egan v. Kaiser Aluminum & Chem. Corp., 94-
1939, p. 5-6 (La. App. 4 Cir. 5/22/96); 677 So.2d 1027, 1032
(relying on Parker's testimony regarding "the properties of
asbestos," and his opinion that "asbestos fibers were 'liberated'
in the areas in which [plaintiff] worked and that the plaintiff
would have inhaled those fibers.").

### B.    Reliability of Parker's Testimony

Amchem also argues that the Court should preclude Parker from
testifying about Vedros's exposure to asbestos via Amchem's
products, because Parker's testimony is based on insufficient facts
and data and is therefore unreliable. Amchem first asserts that
Parker's testimony that Vedros was exposed to asbestos through
Amchem's mastics and adhesives is purely speculative and is not
supported by any evidence contained in the record. Instead, Amchem
argues that Plaintiffs lack any evidence to show that Vedros was
ever exposed to asbestos through Amchem's products. This argument

is identical to that raised in Amchem's Motion for Summary Judgment (Rec. Doc. 214), and concerns a primary issue in Plaintiffs' claims against Amchem: whether Vedros's mesothelioma was caused by exposure to Amchem's products.

The law is clear that "a motion in limine cannot be a substitute for a motion for summary judgment." Morgan v. Miss., 07-15, 2009 WL 3259233, at *1 (S.D. Miss. Oct. 8, 2009) (citing Fed. Prac. & Proc § 5037.18 (2d ed. West 2009) (stating that "the preexisting caselaw provides ammunition against those who would use the motion in limine as a substitute for a motion for summary judgment or other peremptory ruling in civil cases.")). The use of a motion in limine to resolve issues such as causation, which are properly raised in a motion for summary judgment, is thus prohibited. In re Katrina Canal Breaches Consol. Litig., 05-4182, 2009 WL 982104, at *5 (E.D. La. Apr. 13, 2009) (Duval, J.). Here, the issue of whether the record presents sufficient evidence to establish that Vedros was exposed to asbestos via Amchem's products is one that has already been extensively briefed by the parties, and one which this Court has determined must be resolved at trial. Despite this, both Amchem and Plaintiffs devote a substantial portion of their briefs to a detailed discussion of this issue. Not only is this a misuse of both the parties' and the Court's resources, but it is the entirely improper vehicle in which to

raise this issue. Accordingly, the Court will not consider this argument.

Amchem next argues that Parker's testimony lacks reliability because he has failed to calculate the concentration of asbestos to which Vedros was allegedly exposed. Specifically, Amchem notes that "Mr. Parker makes no attempt to quantify concentration or duration and makes no attempt to calculate risk." (Rec. Doc. 448-1, p. 9). However, Amchem provides the Court with no jurisprudence to indicate that experts in the field of asbestos exposure are required to conduct calculations to quantify the level of asbestos to which a party is exposed.

Moreover, the Court must consider the difficulty involved in conducting such calculations, due to the substantial amount of time that has passed since Vedros's alleged exposure. Partly due to this difficulty, both this Court and courts within the State of Louisiana have repeatedly found that in proving exposure, plaintiffs are not required to present evidence of the specific levels or concentrations of asbestos to which they were exposed. Robertson v. Doug Ashy Bldg. Materials, Inc., 10-1552, p. 30 (La. App. 1 Cir. 10/4/11); 77 So.3d 339, 359 (citing Rando v. Anco Insulations, Inc., 08-1163, p. 35 (La. 5/22/09); 16 So.3d 1065, 1091; Comardelle v. Penn. Gen. Ins. Co., No. 13-6555, 2014 WL 7139398, at *4 (E.D. La. Dec. 15, 2014) (Africk, J.).

It logically follows that, in developing their opinions, experts in the field of risk and causation in asbestos cases are not required to rely on specific calculations of the exact dosage or level of asbestos to which a plaintiff was allegedly exposed. A Louisiana court previously addressed this exact issue, concluding that:

> On this issue, again, we cannot find, nor have we been directed to, any authority for the trial court's determination that a plaintiff must prove or that an expert must know the "dose" of asbestos as to each particular defendant in order to establish causation.

Robertson, 77 So.3d at 359. When facing nearly the exact same issue, this Court adopted Robertson, finding that when a plaintiff has proven sufficient evidence to raise a genuine issue of material fact regarding his exposure to asbestos, the plaintiff's experts are not required to prove the specific levels of asbestos concentrations in a defendant's products. Comardelle, 2014 WL 7139398, at *4 (citing Robertson, 77 So.3d at 359) ("[D]r. Hammer need not know whether the asbestos concentrations at Union Carbide reached a particular level in order to offer an opinion as to causation."). In light of these decisions, and considering that the Court has already determined that Plaintiffs have presented sufficient evidence to establish a genuine issue of material fact

regarding Vedros's exposure to asbestos through Amchem's products (Rec. Doc. 318), the mere fact that Parker has not relied on specific calculations of asbestos levels in Amchem's products does not render his testimony unreliable.

Lastly, Amchem argues that Parker's testimony should be deemed inadmissible due to its unreliability, because, in establishing his opinion, Parker relied on a series of experiments and studies conducted by Dr. James Millette ("the Millette studies"). The Millette studies form the basis of another motion filed by Amchem which is currently pending before this Court, and in which Amchem requests that the Court exclude all evidence of tests performed by Dr. Millette and any testimony based thereon. (Rec. Doc. 447). However, resolution of that motion is not necessary to determine the admissibility of Parker's expert testimony.

Amchem does not allege that the Millette studies are the sole piece of evidence on which Parker relies to establish his opinion regarding the risk of exposure from Amchem's products, nor can it. In reaching his opinion regarding Vedros's exposure from mastics, Parker relies both on the Millette studies, as well as measurements of "airborne concentration of asbestos fibers released during removal of mastics used to adhere floor tiles to a surface," which were performed by K.A. Brackett. (Rec. Doc. 459-9, p. 11). These measurements were conducted as part of a 1992 published study by

13

the U.S. Environmental Protection Agency. (Rec. Doc. 459-9, p. 11, 20, n. 57; Rec. Doc. 459, p. 14). Amchem does not contest the reliability of the Brackett measurements, nor does the Court find any reason why these measurements do not constitute valid evidence on which to base an expert opinion. Because Parker has based his expert opinion on the issue of exposure from mastics on reliable scientific literature, it is not necessary in considering whether to exclude Parker's testimony to determine whether the Millette studies are admissible evidence.

Because Amchem has failed to prove that Parker's testimony is speculative or unreliable, or that Parker is not qualified to testify as an expert, the Court finds no reason to exclude Parker's expert testimony at trial.

### CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Amchem's *Motion to Exclude* **(Rec. Doc. 448)** is **DENIED**.

**IT IS FURTHER ORDERED** that Amchem's *Motion for Leave to Reply* **(Rec. Doc. 484)** is **DENIED**, because Amchem's proposed pleading exceeds the page limit allowed by Local Rule 7.7.

New Orleans, Louisiana this 25th day of June, 2015.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

14