UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SALLY GROS VEDROS                                CIVIL ACTION

VERSUS                                           NO: 11-1198

NORTHROP GRUMMAN                                 SECTION: "J" (4)
SHIPBUILDING, INC., ET AL

## ORDER & REASONS

Before the Court is a *Motion to Strike Certain Opinions of Dr. Stephen Terry Kraus Which Are Outside the Scope of Opinions Offered by Dr. Samuel Hammar* **(Rec. Doc. 511)** filed by Defendants Northrop Grumman Shipbuilding, Inc. (n/k/a Huntington Ingalls Incorporated, f/k/a Northrop Grumman Ship Systems, Inc., f/k/a Avondale Industries, Inc., f/k/a Avondale Shipyards, Inc., f/k/a Avondale Marine Ways, Inc.) ("Avondale'), Albert L. Bossier, Jr., and J. Melton Garrett, and OneBeacon America Insurance Company and American Employers Insurance Company in their capacities as alleged insurers of Avondale's alleged executive officers (collectively the "Avondale Interests"). Additionally, the motion filed by the Avondale Interests was adopted by Defendants the MacCarty Corporation ("McCarty") (Rec. Doc. 514); Eagle, Inc., ("Eagle") (Rec. Doc. 515); Continental Insurance Company ("Continental") and Maryland Casualty Company ("Maryland") (Rec. Doc. 523); and Bayer CropScience, Inc., as Successor to Rhone-Poulene AG Company, f/k/a Amchem Products,

Inc., f/k/a Benjamin Foster Company ("Amchem"), who also filed a Supplemental Memorandum (Rec. Doc. 519). Defendants OneBeacon America Insurance Company and American Employers Insurance Company, as alleged insurers of Eagle, Inc., filed a motion to strike that adopts the Avondale Interests' motion as well. (Rec. Doc. 516) Plaintiffs opposed the foregoing motions (Rec. Doc. 533), and the Avondale Interests filed a motion for leave to file a reply to Plaintiffs' opposition. (Rec. Doc. 539) Having considered the motions and legal memoranda, the record, and the applicable law, the Court finds that the motions to strike should be **GRANTED IN PART** and **DENIED IN PART**.

## FACTS AND PROCEDURAL BACKGROUND

The Court is familiar with the facts of the case and so will provide only a brief recitation here. This action arises from the death of Sally Gros Vedros ("Vedros") due to mesothelioma. Alton Gros, Vedros's father, worked at Avondale as a welder from 1943 to 1976, and Vedros claims to have spent many years washing her father's work clothes, which allegedly resulted in Vedros's secondary exposure to insulation dust containing asbestos. Vedros also worked at Avondale from 1960 to 1963 in the purchasing department, and she claims that she was directly exposed to asbestos while she worked at Avondale. Before her death, Vedros filed suit against many Defendants, and after her death, her children joined the suit as Plaintiffs.

2

Although Plaintiffs filed suit in state court, Defendants removed the matter to the United States District Court for the Eastern District of Louisiana on May 20, 2011. The matter was then transferred to the Eastern District of Pennsylvania for inclusion in MDL No. 875, and subsequently remanded to this Court on March 21, 2013.

Since that time, the Court has continued trial of this matter on a number of occasions for various reasons. Accordingly, the Court has issued several Scheduling Orders. Plaintiffs timely supplied the expert report of Dr. Samuel Hammar on February 17, 2012, in accordance with a previous scheduling order. On April 7, 2015, however, Dr. Hammar announced that he is unavailable to provide deposition or trial testimony due to medical concerns. (Rec. Doc. 406-5) Under the current Scheduling Order, trial is set for August 10, 2015. (Rec. Doc. 386)

Because Dr. Hammar is unable to provide deposition or trial testimony, Plaintiffs sought permission to obtain an expert report from Dr. Kraus or Dr. Kradin or both to replace that of Dr. Hammar. (Rec. Doc. 406). Defendants generally did not oppose Plaintiffs' request to obtain a replacement medical expert. They argued, however, that the Court should not permit Plaintiffs to replace one expert with two. (Rec. Docs. 421, 423, 426) Additionally, Defendant Westinghouse argued that the Court

should restrict the scope of the replacement report to that of the original report from Dr. Hammar to prevent Defendants from having to secure responses to any additional testimony from their experts. (Rec. Doc. 423) Defendant Avondale objected to Plaintiffs' use of Dr. Kraus as an expert and sought to have the Court require Plaintiffs to employ Dr. Kradin instead. (Rec. Doc. 426) The Court agreed with Defendants that Plaintiffs should not replace Dr. Hammar with two experts. In allowing the substitution, the Court further ordered that "Plaintiffs shall limit the scope of the replacement testimony to that of Dr. Hammar as much as possible." (Rec. Doc. 435, p. 5)

On July 10, 2015, the Avondale Interests filed the instant *Motion to Strike Certain Opinions of Dr. Stephen Terry Kraus Which Are Outside the Scope of Opinions Offered by Dr. Samuel Hammar* **(Rec. Doc. 511)**, which a number of Defendants subsequently adopted. (Rec. Docs. 514, 515, 519, 523) On July 14, 2015, Defendants OneBeacon America Insurance Company and American Employers Insurance Company filed a separate motion to strike that adopts the Avondale Interests' motion. (Rec. Doc. 516) Plaintiffs opposed these motions on July 21, 2015. (Rec. Doc. 533)

### PARTIES' ARGUMENTS

Defendants argue that many of Dr. Kraus's opinions are contrary to or concern matters not addressed by Dr. Hammar.

4

Specifically, Defendants take issue with at least nine of Dr. Kraus's opinions or sets of opinions: (1) No. 5; (2) Nos. 15-18, 20; (3) No. 23; (4) No. 26; (5) No. 30; (6) Nos. 21, 22, 24, 25; (7) No. 33; (8) No. 35; and (9) Nos. 37, 38.[1] Defendants ask the Court to strike these opinions because they go beyond the scope of Dr. Hammar's expert report and testimony and deviate in such a way that unfairly prejudices the Defendants.

In its Supplemental Memorandum, Amchem argues that any of Dr. Kraus's causation opinions based upon the deposition testimony of either Lori Vedros Kravet or Bobby S. Jambon exceed the scope of Dr. Hammar's opinions because Dr. Hammar did not review those two depositions in preparation of his report. Additionally, Amchem argues that Dr. Kraus's "Rebuttal Report to Dr. Stockman" (Rec. Doc. 519-3) should be stricken in its entirety because Dr. Stockman is no longer an expert in this matter and because Dr. Kraus's rebuttal report was untimely, seeks to offer additional causation opinions, goes beyond the scope of Dr. Stockman's report, and goes beyond the scope of the opinions offered by Dr. Hammar.

In opposition, Plaintiffs generally argue that they have limited the scope of Dr. Kraus's replacement testimony to that of Dr. Hammar "as much as possible." Although Dr. Kraus's report may include additional references and support for his opinions,

---

[1] The numbered opinions correspond to the numbered conclusions in Dr. Kraus's report (Rec. Doc. 511-3).

5

and the fact that Dr. Kraus "may have presented the details of the articles differently in his report from Dr. Hammar," Plaintiffs argue that Dr. Kraus's opinions are "not outside the scope of Dr. Hammar's opinions and are actually in line with Dr. Hammar's opinions." (Rec. Doc. 533, pp. 4, 7-8)

## DISCUSSION

This Court recently considered a similar motion filed by Plaintiffs seeking to strike the opinions of a substitute expert, Dr. Gail Stockman, that were outside the scope of opinions offered by the original expert, Dr. Robert Sawyer. (Rec. Doc. 477) Plaintiffs argued, just as the Defendants do now, that certain opinions of the substitute expert deviated from those of the original expert in a way that unfairly prejudices Plaintiffs. The Court agreed and, striking those opinions, stated that "[t]he decision to allow a substitute expert to testify was based on the understanding that the substitute report and testimony would not go beyond the original expert's report and testimony and that the substitute would testify to the same conclusions." (Rec. Doc. 506, p. 6) The same applies here.

A.   **Arguments Raised by the Avondale Interests**

1.   **Kraus Opinion No. 5**

In Opinion No. 5, Dr. Kraus opines that "Vedros also had occupational exposure at Avondale, where she worked in an

6

office." (Rec. Doc. 511-3, p. 1) Defendants argue that Dr. Hammar did not opine that Vedros was exposed to asbestos while she worked in the office at Avondale. Dr. Hammar's Opinion No. 23 states that Vedros's mesothelioma was caused by her "total and cumulative exposure to asbestos[, which] was primarily due to bystander exposure from her father." (Rec. Doc. 511-2, p. 6) In other words, Hammar opined that Vedros's bystander exposure was her primary exposure, though not her only exposure. Furthermore, Hammar Opinion No. 2 states that Vedros worked at Avondale between 1960 and 1963, and Hammar Opinion No. 52 opines that "occupational and bystander exposures . . . have the ability to contribute to the causation of mesothelioma." (Rec. Doc. 511-2, pp. 5, 11) While this may be sufficient to create an inference that Dr. Hammar opined that Vedros had some occupational exposure, Dr. Hammar's deposition testimony provides further clarification. Dr. Hammar testified that it is correct to say that Vedros was "exposed to asbestos directly from Avondale shipyards, and . . . that that [exposure] would have . . . been a significant contributing factor." (Rec. Doc. 533-4, pp. 14-15)

    Defendants are correct to say that Dr. Hammar's report did not explicitly state that Vedros was exposed to asbestos while she worked in the office at Avondale. However, Dr. Hammar's report mentions that Vedros worked at Avondale, discusses

7

occupational exposure generally, and concludes that her mesothelioma was caused by her total and cumulative exposure to asbestos. Considering Dr. Hammar's report together with his deposition testimony, which seems to clarify his opinion that at least some of Vedros's exposure was occupational, the Court concludes that Dr. Kraus's opinion is not outside the scope of Dr. Hammar's opinions and testimony.

   2.   **Kraus Opinions Nos. 15-18, 20**

Kraus Opinions Nos. 15-18, 20 generally concern "state-of-the-art" knowledge of asbestos-related diseases. For example, Kraus Opinion No. 15 states that the "first written record of asbestos was by Theophrastus in 300 BC," and describes two of the early definitions of asbestos. (Rec. Doc. 511-3, p. 3) In addition, Kraus Opinion No. 16 states "Ramazzini, in 1713, noted that laundresses 'had fallen sick from various ailments contracted in the court of their work' . . . from direct contact with linens and bedclothes." (Rec. Doc. 511-3, p. 3)

The Avondale Interests argue that these opinions are contrary to those expressed by Dr. Hammar in his report and testimony. Hammar Opinion No. 30 states "[t]he earliest publication that brought attention to the fact that asbestos caused neoplastic diseases in the United States were case reports . . . in the 1930s." (Rec. Doc. 511-2, p. 7) Additionally, Dr. Hammar testified that Dr. Meriwether's 1965

8

paper published in Great Britain was the first published paper recognizing the risk of developing mesothelioma from handling contaminated work clothing. (Rec. Doc. 511-4, pp. 10-11)

In opposition, Plaintiffs argue that Dr. Kraus's opinions do not contradict those of Dr. Hammar and are limited in scope to those of Dr. Hammar because both experts offer state of the art opinions in their reports. According to Plaintiffs, "Dr. Kraus simply traces the history of the state of the art further back in time." (Rec. Doc. 533, p. 3) However, because Dr. Kraus traced the history further back in time, these opinions are not "limited in scope as much as practicable" to those of Dr. Hammar. Accordingly, Kraus Opinions Nos. 15-18, 20 are outside the scope of Dr. Hammar's report and opinions and should be stricken.

### 3.   Kraus Opinion No. 23

Kraus Opinion No. 23 refers to the "1951 Welsh-Healy Public Contracts Act," which recommends that asbestos workers be provided with "necessary protective work clothes." (Rec. Doc. 511-3, p. 4) The Avondale Interests argue that this opinion is outside the scope of Dr. Hammar's opinions because Dr. Hammar does not address the purported requirements of the Welsh-Healy Act.

Plaintiffs do not deny that Dr. Hammar's expert report makes no mention of the Welsh-Healy Act. Instead, Plaintiffs

9

argue that this opinion is a state-of-the-art opinion that "simply adds additional support for Dr. Kraus' opinion that the risk of carrying asbestos home on work clothing was recognized early on." (Rec. Doc. 533, p. 4) In other words, Plaintiffs argue that Dr. Kraus's and Dr. Hammar's opinions are the same, "Dr. Kraus just included this additional reference, which further supports their opinions on this issue."

As mentioned above, this Court ordered Plaintiffs to "limit the scope of [Dr. Kraus's report] to that of Dr. Hammar as much as possible." (Rec. Doc. 435, p. 5) Because Dr. Kraus's report contains additional references and support, it exceeds the scope of Dr. Hammar's report. Accordingly, Kraus Opinion No. 23 is outside the scope of Dr. Hammar's report and opinions and should be stricken.

    **4.   Kraus Opinion No. 26**

Kraus Opinion No. 26 cites the Consensus Report of the 1997 Helsinki Conference ("Helsinki Report"). Dr. Kraus quotes the Helsinki Report, stating "[o]ccupational history of brief or low level exposure should be sufficient for mesothelioma to be designated as occupationally related." In addition, Dr. Kraus opines that "domestic or para occupational asbestos exposure 'is

10

all that is required for malignant mesothelioma to be asbestos related.'"[2] (Rec. Doc. 511-3, p. 5)

Dr. Hammar also cites the Helsinki Report. Hammar Opinion No. 51 states that, according to the Helsinki criteria, "very low background environmental exposures carry only an extremely low risk." Additionally, Hammar Opinion No. 52 states that "all occupational and bystander exposures to asbestos above the concentration identified in the case-control epidemiology studies and within the latency period have the ability to contribute to the causation of mesothelioma." (Rec. Doc. 511-2, p. 11)

Plaintiffs argue that Kraus Opinion No. 26 is the same as Hammar Opinion No. 52 because both opinions recognize causative exposures from occupational and para-occupational exposure. The Court agrees that both experts' opinions are similar. However, Dr. Hammar's opinion seems to be narrower than Dr. Kraus's because Dr. Hammar opines that only those exposures "above the concentration identified" have the ability to be causative. In this regard, Dr. Kraus's opinion goes beyond the scope of Dr. Hammar's.

Plaintiffs also argue that Hammar Opinion No. 51 is the same as Kraus Opinion No. 32, which states that "[b]ackground asbestos exposure is negligible and not a factor in developing

---

[2] Although Dr. Kraus attributes this quotation to the Helsinki Report, the Court is unable to find that exact language therein. (*See* Rec. Doc. 533-6)

11

malignant mesothelioma." (Rec. Doc. 511-3, p. 6) In other words, Kraus Opinion No. 32 limits Opinion No. 26 to those exposures over the background level. Considering Kraus Opinions Nos. 26 and 32 together, the Court finds that Dr. Kraus's opinions are not contradictory to those of Dr. Hammar.

The Avondale Interests also argue that Dr. Hammar testified that the Helsinki Report states that a significant environmental exposure to asbestos will suffice for attributing a mesothelioma to asbestos exposure, and they anticipate that Dr. Kraus will testify to the contrary. However, during his deposition on July 14, 2015, Dr. Kraus testified that significant environmental exposure to asbestos "would have to be one of the contributing factors." (Rec. Doc. 533-5, p. 6) Therefore, both experts' opinions are the same in this regard.

    **5.**    **Kraus Opinion No. 30**

In Opinion No. 30, Dr. Kraus opines that "[w]orkers who have had occupational exposure to asbestos have a 5-11% risk of developing malignant mesothelioma." (Rec. Doc. 511-3, p. 6) The Avondale Interests argue that this opinion is outside the scope of Dr. Hammar's opinions because nothing in Dr. Hammar's opinions and testimony mentioned a 5-11% risk.

Plaintiffs argue that both experts' reports discuss the risk of disease to exposed individuals and "[t]he fact that Dr. Kraus may have presented the details of the articles differently

12

. . . does not mean that his opinions are outside the scope of Dr. Hammar's opinions." (Rec. Doc. 533, p. 8). The Court finds that both reports do discuss risk of disease, but the Avondale Interests are correct that Dr. Hammar does not mention a 5-11% risk. Accordingly, Dr. Kraus's opinion regarding the 5-11% risk is outside the scope of Dr. Hammar's report and opinions and should be stricken.

### 6. Kraus Opinion Nos. 21, 22, 24, 25

Kraus Opinion No. 21 refers to a 1943 article by Wedler, Kraus Opinion No. 22 refers to the Annual Report of the Chief Inspector of Factories for the year 1947, Kraus Opinion No. 24 refers to a 1956 article by Lieber, and Kraus Opinion No. 25 refers to a 1960 article by Wagner. (Rec. Doc. 511-3, p. 4) The Avondale interests argue simply that these opinions "are outside the scope of Dr. Hammar's opinion and should be stricken." (Rec. Doc. 511-1, p. 6)

In response, Plaintiffs argue that these Kraus Opinions are not outside the scope of Dr. Hammar's opinions because Dr. Hammar's report similarly references three of these four articles. Hammar Opinion No. 31 refers to the 1943 Wedler article, Hammar Opinion No. 33 refers to the 1947 Annual Report, and Hammar Opinion No. 35 refers to the 1960 Wagner article. (Rec. Doc. 511-2, pp. 7-8) However, Plaintiffs admit that Dr. Hammar does not reference the 1956 Liber article, but argue that

13

this "is an additional state of the art article [and] is not outside the scope of Dr. Hammar's report." (Rec. Doc. 533, p. 7) Because Dr. Hammar's report includes similar references to the articles cited in Kraus Opinions Nos. 21, 22, and 25, the Court finds that these opinions are not outside the scope of those of Dr. Hammar. Kraus Opinion No. 24, however, is outside the scope of Dr. Hammar's report and opinions and should be stricken.

### 7. Kraus Opinion No. 33

In his Opinion No. 33, Dr. Kraus opines that "[t]he risk of malignant mesothelioma for individuals with domestic or para occupational exposure to asbestos workers may be as high as 9%. The main cause of domestic or para occupational exposure is from laundering the clothes of asbestos workers." (Rec. Doc. 511-3, pp. 6-7) The Avondale Interests argue that "[n]othing in Dr. Hammar's report or testimony mentions a risk factor from domestic exposure." (Rec. Doc. 511-1, p. 7)

Plaintiffs argue that Kraus Opinion No. 33 is within the scope of Dr. Hammar's opinions because Dr. Hammar's report "is replete with references identifying an increased risk of mesothelioma to occupationally exposed workers as well as those who sustain para-occupational or domestic exposure." (Rec. Doc. 533, p. 8) A number of Dr. Hammar's opinions discuss occupational exposure, and in his deposition testimony he confirmed that he believes that "Vedros developed mesothelioma,

14

at least in part, as a result of handling her father's contaminated work clothing." (Rec. Doc. 511-4, p. 11) Although Dr. Hammar's report discusses occupational and domestic exposure generally, the Avondale Interests correctly point out that Dr. Hammar does not mention a specific risk factor from domestic exposure. Accordingly, Kraus Opinion No. 33 exceeds the scope of Dr. Hammar's opinions in this regard and should be stricken.

    8.   **Kraus Opinion No. 35**

In his Opinion No. 35, Dr. Kraus opines that "[t]he mean life expectancy of individuals with malignant mesothelioma is 9-12 months." (Rec. Doc. 511-3, p. 7) The Avondale Interests argue that this opinion is outside the scope of Dr. Hammar's report and also irrelevant. While Plaintiffs argue that opinions regarding the mean life expectancy of mesothelioma victims are relevant, they do not address whether this opinion is within the scope of Dr. Hammar's report. Because Dr. Hammar's report and testimony does not include any opinions regarding the mean life expectancy of individuals with malignant mesothelioma, Kraus Opinion No. 35 is outside the scope of Dr. Hammar's opinions and should be stricken.

    9.   **Kraus Opinions Nos. 37, 38**

Kraus Opinions Nos. 37 and 38 describe the quality of life of mesothelioma victims and the various symptoms that they suffer. (Rec. Doc. 511-3, pp. 7-8) The Avondale Interests argue

15

that these opinions exceed the scope of Dr. Hammar's report and testimony because Dr. Hammar's report and testimony did not include any opinions regarding quality of life for mesothelioma victims or potential symptoms. Additionally, the Avondale Interests argue that such opinions are irrelevant.

Plaintiffs argue that these opinions are not outside the scope of those offered by Dr. Hammar because Dr. Hammar reviewed Vedros's medical record and specifically noted her symptoms from her mesothelioma. However, Dr. Kraus opines as to the quality of life and potential symptoms of mesothelioma victims generally, not Vedros's quality of life or symptoms that she actually suffered. Therefore, these opinions by Dr. Kraus are outside the scope of Dr. Hammar's report and testimony and should be stricken.

**B.   Arguments Raised by Amchem**

    **1.   Kraus Opinion No. 2**

Amchem argues that Dr. Kraus's opinions exceed the scope of Dr. Hammar's opinions because Dr. Kraus reviewed two additional depositions that Dr. Hammar did not review, the depositions of Lori Vedros Kravet abd Bobby S. Jambon. The only opinion of Dr. Kraus that Amchem cites in support of its argument is Kraus Opinion No. 2, which lists the materials that Dr. Kraus reviewed.

In their opposition, Plaintiffs argue that the fact that Dr. Kraus reviewed these two additional depositions did not cause his opinions to be outside the scope of Dr. Hammar's opinions, and Amchem has not cited to any opinion that was outside the scope of Dr. Hammar's opinions based upon his review of these two additional depositions. The Court agrees with Plaintiffs. Amchem has not cited any opinions of Dr. Kraus that are outside the scope of Dr. Hammar's report and testimony because he reviewed these additional depositions.

2. **Kraus Rebuttal Report to Dr. Stockman**

Amchem argues that Dr. Kraus's June 25, 2015, Rebuttal Report to Dr. Stockman (Rec. Doc. 519-3) should be stricken in its entirety because it was filed untimely, it seeks to expound upon his causation opinions, and it is now moot because Westinghouse has settled and Dr. Stockman is no longer an expert in this matter. The Court agrees with Amchem. Because Defendant Westinghouse has settled and Dr. Stockman is no longer an expert in this matter, no rebuttal report is necessary. Therefore, the Court strikes Dr. Kraus's Rebuttal Report to Dr. Stockman in its entirety.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the *Motion to Strike Certain Opinions of Dr. Stephen Terry Kraus Which Are Outside the Scope*

17

of *Opinions Offered by Dr. Samuel Hammar* **(Rec. Doc. 511)** is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that the *Motion to Strike Certain Opinions of Dr. Stephen Terry Kraus Which Are Outside the Scope of Opinions Offered by Dr. Samuel Hammar* **(Rec. Doc. 516)** is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that the *Motion for Leave to File Reply Memorandum to Plaintiff's Opposition* **(Rec. Doc. 539)** and the *Motion for Leave for Amchem to File Memorandum in Support of Motion to Strike* **(Rec. Doc. 548)** are **DENIED as moot**.

New Orleans, Louisiana this 29th day of July, 2015.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE